## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARIA MOE,

    Plaintiff,

    v.

DONALD TRUMP, in his official capacity as
President of the United States; JAMES R.
MCHENRY III, in his official capacity as Acting
Attorney General of the United States; WILLIAM
LOTHROP, in his official capacity as Acting
Director of the Federal Bureau of Prisons,

    Defendants.

Civil Action No. 1:25-cv-10195

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.    This Action is a federal constitutional challenge to Sections 4(a) and 4(c) of
Executive Order 14166, titled "Defending Women from Gender Ideology Extremism and
Restoring Biological Truth to the Federal Government," which President Donald Trump issued
just hours after his inauguration on January 20, 2025. The Order directly targets transgender
Americans by attempting to deny them legal recognition under federal law and to strip them of
long-established legal protections. Under Sections 4(a) and 4(c) of the Order, transgender women
who are incarcerated in federal prisons will be unlawfully transferred to men's facilities and
denied medically necessary healthcare.

2.      Plaintiff Maria Moe is an adult transgender woman incarcerated in a low-security federal prison for women ███████████████████████. Maria Moe is diagnosed with gender dysphoria, a rare but serious medical condition and disability. The medical standard of care for treatment of gender dysphoria is to allow a transgender person to live in a sex different than their birth sex through counseling, medications, surgical care, and social transition.

3.      Consistent with this standard of care, Maria Moe has lived as a woman and has taken hormones continuously since she was a teenager. During her term of incarceration, she has always been treated as a woman by federal correctional officials and her peers. She has never been housed in a men's facility and has never stopped taking hormones. Until January 23, 2025, publicly available records from the Bureau of Prisons (BOP) identified her sex as "female." On January 25, the same records classified her as "male" because of the Executive Order.

4.      On January 21, 2025, one day after Defendant Trump signed Executive Order 14166, BOP officials removed Maria Moe from the general population at ███████ and placed her in the Special Housing Unit (SHU). BOP officials informed her that because of the Order, she was being transferred to a men's facility. Maria Moe remains in the SHU pending transfer. She has not been permitted to have contact with others for at least four days.

5.      If Maria Moe is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

6.      Maria Moe is also at imminent risk of losing access to the medical care she needs to treat her gender dysphoria. Executive Order 14166 singles out transgender people to deny them essential healthcare, including medications that BOP may continue to provide to non-transgender people. The Order categorically bans transgender healthcare regardless of medical necessity. It prohibits prison medical providers from treating transgender patients' gender dysphoria on an individual basis according to independent medical judgment. This blanket ban will deprive Maria Moe of essential medication she has taken continuously since she was a teenager, putting her at high risk of serious harm.

7.      Maria Moe brings claims for violations of the Fifth Amendment to the United States Constitution; the Eighth Amendment to the United States Constitution; the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*; and the Administrative Procedure Act, 5 U.S.C. §§ 701–06. Maria Moe seeks declaratory and injunctive relief to enjoin enforcement of Sections 4(a) and 4(c) of Executive Order 14166. Without the injunctive relief sought, Maria Moe will experience irreparable injury.

## JURISDICTION AND VENUE

8.      This action arises under the Constitution of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

9.      This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and 65, and this Court's inherent equitable powers.

10.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because the Plaintiff is domiciled in this district.

3

## PARTIES

11.     Plaintiff Maria Moe is a transgender adult woman. She is domiciled in Massachusetts, where she resided prior to her incarceration and where she faced criminal prosecution and sentencing to BOP's custody. Maria Moe is a pseudonym.

12.     Defendant Donald Trump is sued in his official capacity as the President of the United States. Defendant Trump issued and will oversee the implementation of Executive Order 14166.

13.     Defendant James R. McHenry III is sued in his official capacity as Acting Attorney General of the United States. The Acting Attorney General oversees the Department of Justice, including the Bureau of Prisons, and has responsibility for overseeing the enforcement and implementation of Sections 4(a) and 4(c) of Executive Order 14166 with respect to the Bureau of Prisons.

14.     Defendant William Lothrop is sued in his official capacity as Acting Director of the Federal Bureau of Prisons (BOP). The Acting Director of BOP has responsibility for overseeing enforcement and implementation of Executive Order 14166 by all BOP staff.

## FACTS

### I.    Maria Moe's Sudden and Unjustified Removal From General Population and Risk of Transfer to a Men's Facility

15.     BOP maintains separate housing facilities for men and women. With respect to transgender women, BOP applies an individualized assessment process to determine appropriate housing, consistent with the safety and security of all individuals. Based on this assessment,

transgender women may be housed in women's facilities when doing so promotes safety and security.[1]

16.    Maria Moe has been housed in a women's facility since her arrest. She remained in a women's facility through her arraignment, pre-sentence detention, and subsequent incarceration.

17.    On January 20, 2025, the President issued an Executive Order directing the BOP to disregard its established policy and any associated safety and security risks concerning the housing and care of transgender women.

18.     Pursuant to this Executive Order, the BOP removed Maria Moe from the general population of the women's facility where she had been housed.

19.    Maria Moe was subsequently placed in the SHU. She was told that the reason she was removed from general population was because of the Executive Order.

20.    She was also informed that she will be imminently transferred to a men's facility because of the Executive Order.

21.    On January 23, 2025, Marie Moe's publicly accessible BOP classification of her sex was "female." On January 25, that classification indicated "male."

22.    Maria Moe has no ability to contest her placement in the SHU, and BOP officials told her she could not challenge the transfer because it was required by the Executive Order.

---

[1] U.S. Dep't of Just., Transgender Offender Manual §§ 5–6 (2022), available at https://www.bop.gov/policy/progstat/5200-08-cn-1.pdf.

23.     Maria Moe's removal from general population, placement in the SHU, and anticipated transfer to a men's facility have caused her significant distress and raise serious and imminent concerns regarding her safety and well-being.

## II.    Gender Dysphoria

24.     Gender dysphoria a serious medical condition marked by the significant distress or impairment that occurs when a transgender individual is made to live in their birth sex. The condition is highly treatable. When left untreated, however, it causes serious physical and emotional harms.

25.     Scientific and medical research also shows that gender dysphoria has a physiological and biological etiology.

26.     The only current, medically accepted treatment for gender dysphoria is to enable a transgender person to live in the sex different than their birth sex.

27.     The medical and scientific community recognize well-established protocols for supporting a person to go through gender transition, the treatment that allows a transgender person to live in their target sex. These protocols are endorsed by the major medical and mental health associations in the United States, including but not limited to the American Medical Association, the American Psychiatric Association, the American Psychological Association, and the Endocrine Society.

28.     Under these accepted protocols, treatment for gender dysphoria can involve any combination of social transition, medications, including hormones, and a range of surgeries. The treatment prescribed for a particular patient depends on an individualized assessment of the

patient's health and needs. Gender transition care, including hormone therapy, is a highly effective treatment for gender dysphoria.

### III.    Maria Moe's Gender Dysphoria Diagnosis and Gender Transition

29.    Maria Moe is a ███████ transgender woman from ████████, Massachusetts.

30.    Maria Moe identified as female at a young age. This mismatch between her birth sex and who she knew herself to be caused her significant distress, which manifested as depression, anxiety, and lack of self-esteem.

31.    In middle school, Maria Moe disclosed to her mother that she felt like a girl and believed she was transgender. Her mother contacted medical and mental health providers, who diagnosed Maria with gender dysphoria.

32.    Maria Moe began living as female, used a female name, and was socialized as a girl among family and friends. When she entered high school, she matriculated as a girl. Throughout her time in high school, she was integrated in the school community as other girls. She used the girls' bathroom at school, █████████████████████████████████ ███████████████

33.    Based on the recommendations of her healthcare providers, Maria Moe began taking hormones to treat her gender dysphoria and to allow her to live as female at around age 15. Since then, she has continuously taken hormones to treat her gender dysphoria according to her medical providers' judgment and advice.

34.    Maria Moe has lived as a woman for the last ██ years. She is acknowledged, accepted, and treated as a woman by her peers, her friends, her close family. █████████ ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████

35.     ████████████████████████████████████████████████

████████████████████████████████████████████████ she has always

been housed in a women's facility while in federal custody. She has no violent disciplinary

history, poses no threat to her female peers, and her presence in the women's facility has not

caused any disruption or interference with prison operations.

36.     ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Prior to

January 20, 2025, Maria Moe was consistently receiving this medically necessary treatment and

had no reason to believe it would be terminated.

## IV.    **Executive Order 14166 Will Cause Maria Moe Irreparable Injury**

37.     Executive Order 14166 began causing harm to Maria Moe almost immediately.

As a result of the Order, she has already suffered significant distress. The Order also raises

serious concerns for her safety and well-being going forward.

38.     Section 2 of the Order includes a definition of "sex" that is intentionally designed

to discriminate against transgender people. Specifically, Section 2 defines "sex" as "an

individual's immutable biological classification as either male or female." In turn, it defines

"male" as "a person belonging, at conception, to the sex that produces the small reproductive

cell," and "female" as "a person belonging, at conception to the sex that produces the large

reproductive cell." It includes these definitions to preclude transgender people from being able to live in a sex different than their birth sex and to deny them equal treatment.

39.    Section 4(a) of the Order then directs federal agencies to implement this discriminatory provision, including requiring the Attorney General to categorically bar all transgender women from ever being housed in women's prisons with no individualized consideration of their safety and security. That section acknowledges that the requirement contradicts federal regulations found at 28 C.F.R. § 115.41.

40.    On January 21, 2025, BOP officials informed Maria Moe that because of the Order, she would be transferred to a men's facility. They then placed her in the SHU, where she has no contact with others, pending transfer.

41.    On January 25, 2025, BOP changed Maria Moe's sex designation on publicly available records. Prior to January 25, the same records identified Maria Moe as "female." Now, solely because of her birth sex, they designate her as "male."

42.    Maria Moe has never been housed in a men's facility. If she is transferred to a men's facility, she will face serious risk of victimization and sexual violence. She will not be safe. Evidence, research, case law, and practical experience show that transgender women housed in men's prisons face near constant sexual harassment and extremely high levels of violence and sexual assault. Federal regulations recognize transgender status as a risk factor for sexual assault. *See* 28 C.F.R. §§ 115.41(d)(7), 115.42(c)–(f). A 2013 study by the Department of Justice estimated that nearly 35% of transgender inmates in state and federal prisons were sexually assaulted between 2007 and 2012. U.S. Dep't of Justice Off. of Justice Programs, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011–12*, NCJ No. 241399,

Supplemental Table 1 (2013).[2] From 2011 to 2012, transgender people were sexually assaulted at nearly ten times the rate for the general incarcerated population.[3]

43.    In a men's facility, Maria Moe will be at extremely high risk of rape and sexual assault. She may also be subjected to humiliating, terrifying, and dangerous circumstances like being strip searched by male correctional officers and forced to shower among men, with her female body, including her breasts, exposed and vulnerable to sexual violence.

44.    Further, Maria Moe will predictably experience a worsening gender dysphoria in a men's facility. She may be forced to wear men's clothing and undergarments, prevented from styling her hair as female, referred to as a man, and addressed by her stereotypically male former name rather than the female name she has had for over ██ years. Treating a transgender woman with gender dysphoria as a man is known to intensify dysphoria, undermine medical treatment, and increase emotional distress, and it can precipitate self-harm.

45.    Section 4(c) of the Order will also cause Maria Moe serious, irreparable injury. Section 4(c) eliminates Maria Moe's ability to continue taking female hormones to treat her gender dysphoria and that her body has adjusted to receiving for the last ██ years. Specifically, the provision requires the Attorney General to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."

---

[2] Available at https://bjs.ojp.gov/content/pub/pdf/svpjri1112_st.pdf.

[3] *Compare id.* (noting a 39.9% sexual victimization rate for transgender people from 2011 to 2012), *with* the full report at 6 (reflecting a 4.0% rate of sexual victimization in the general prison population from 2011 to 2012), available at https://bjs.ojp.gov/content/pub/pdf/svpjri1112.pdf.

46.     The BOP is aware that gender dysphoria creates a serious medical need for gender transition treatments, including hormone therapy, and that Maria Moe has a serious medical need for such treatment. BOP policy expressly allows hormone therapy as a treatment for gender dysphoria based on an "individualized assessment" by medical staff.[4] If providers determine that hormone therapy is appropriate for an individual, hormone therapy "will be provided."[5] Consistent with this policy, the BOP has consistently provided hormone therapy to Maria Moe for years.

47.     If Maria Moe's medically necessary treatment for gender dysphoria is terminated or restricted under Section 4(c), she will be at a well-known and substantial risk of serious harm. Medical professionals experienced in the treatment of gender dysphoria and in the prolonged use of hormones for medical care recognize that the abrupt termination and ongoing denial of hormone therapy can have disastrous consequences, including serious risk of permanent physical and emotional harm, severe danger of self-mutilation, and suicidal ideation and attempts.

48.     In addition, Ms. Doe ███████████████████████████████
█████████████████████████████████████████████████████████
████████████████████████████████████

---

[4] U.S. Dep't of Just., Transgender Offender Manual § 8 (2022), available at https://www.bop.gov/policy/progstat/5200-08-cn-1.pdf.

[5] *Id*.

## V.    Executive Order 14166 Facially Classifies on Behalf of Sex and Transgender Status and Was Motivated By Discriminatory Animus

49.    Executive Order 14166 classifies individuals on the basis of sex and transgender status. It was motivated by a sex-based discriminatory purpose and animus against transgender people.

50.    Defendant Trump has been transparent about his hostility toward transgender people and openly stated his intentions to create legal obstacles to eliminate legal protections for transgender people and to deter them from obtaining medical care or being able to live in a sex other than their birth sex. On November 15, 2022, when he announced his candidacy for President, he explicitly promised to target transgender Americans through executive action.[6] He pledged a "day one" executive order to "cease all programs that promote the concept of sex and gender transition at any age."[7]

51.    Throughout his campaign, Defendant Trump repeatedly characterized transgender Americans in dehumanizing terms, referring to them as "deranged,"[8] and victims of "madness"[9]

---

[6] ABC Action News, *(Full Speech) Former President Trump announces 2024 presidential bid* at 48:40-49:13, YouTube (Nov. 15, 2022), https://www.youtube.com/watch?v=8tSYwJ1_htE; *id.* at 50:39-53 (suggesting he would attempt to ban transgender people from military service).

[7] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, Trump Vance: Make America Great Again! 2025 (Feb. 1, 2023), https://www.donaldjtrump.com/agenda47/president-trumps-plan-to-protect-children-from-left-wing-gender-insanity.

[8] Gabriel Bertrand, *Trump's Shocking Admission Exposes GOP's Bigoted Agenda*, Medium (June 17, 2023), https://medium.com/illumination/trumps-shocking-admission-exposes-gop-s-bigoted-agenda-e981becb2c5f.

[9] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

and "insanity."[10] He falsely claimed transgender identity was "never heard of in all of human history" and described transgender healthcare as "mutilation."[11]

52.    Defendant Trump's campaign devoted substantial resources to promoting anti-transgender policies, spending approximately $215 million on advertisements vilifying transgender Americans.[12] These advertisements comprised over 40 percent of all pro-Trump campaign messaging in the weeks before the 2024 election.[13]

53.    Defendant Trump's official campaign platform included a "Plan to Protect Children from Left-Wing Gender Insanity," which promised to deny legal recognition to transgender Americans and restrict access to medically necessary healthcare.[14]

---

[10] Jackson Walker, *Trump vows to remove 'transgender insanity' and critical race theory from US schools*, IdahoNews (Dec. 23, 2024, 8:37AM), https://idahonews.com/news/nation-world/trump-vows-to-remove-transgender-insanity-and-critical-race-theory-from-us-schools-phoeniz-arizona-woke-speech-usa-donald-president-white-house-education-department-crt-trans-gender-lgbt; *Trump and Vance make anti-transgender attacks central to their campaign's closing argument*, NBC News (Nov. 1, 2024, 10:23 AM), https://www.nbcnews.com/nbc-out/out-politics-and-policy/donald-trump-jd-vance-transgender-2024-election-rcna178390; Donald J. Trump, Truth Social (Dec. 18, 2023), https://truthsocial.com/@realDonaldTrump/posts/111599880929254153; Gabriel Bertrand, *supra* note 8; Joe Middleton, *Trump attacks transgender rights at Waco rally saying he will ban 'disfigurement of our youth'*, The Independent (Mar. 26, 2023), https://www.independent.co.uk/news/world/americas/donald-trump-transgender-waco-rally-b2308177.html.

[11] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

[12] Audrey Kemp, *What Trump's win – and $215m worth of anti-trans ads – mean for the future of campaigning*, The Drum (Nov. 6, 2024), https://www.thedrum.com/news/2024/11/06/after-donald-trump-s-victory-marketers-weigh-their-role-countering-divisive.

[13] Lauren Barrón-López et al., *Why anti-transgender political ads are dominating the airwaves this election*, PBS News (Nov. 2, 2024 5:35 PM), https://www.pbs.org/newshour/show/why-anti-transgender-political-ads-are-dominating-the-airwaves-this-election.

[14] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

54.    On December 23, 2024, after winning the election, Defendant Trump reaffirmed his intent to implement discriminatory policies through executive action, stating "with a stroke of [his] pen on day one," he would "stop the transgender lunacy" and "get transgender out of the military and out of our elementary schools and middle schools and high schools."[15]

55.    Executive Order 14166, issued on Defendant Trump's first day in office, implements these campaign promises, demonstrating that the discriminatory animus expressed throughout his campaign was the driving force behind the Order's restrictions on incarcerated transgender people for medical care and housing.

56.    The timing, content, and context of Executive Order 14166 demonstrate it was motivated by and implements the same discriminatory animus Defendant Trump repeatedly expressed during his campaign, rather than any legitimate government purpose.

## CLAIMS FOR RELIEF

### COUNT I

**Challenge to Sections 4(a) and 4(c)**
**Fifth Amendment to the United States Constitution**
**Due Process Clause - Deprivation of Equal Protection of the Laws**
**Against All Defendants in Their Official Capacities**

57.    Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

58.    Like the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment prohibits unwarranted discrimination by the federal government.

---

[15] Azcentral.com and The Arizona Republic, *Turning Point USA Donald Trump full speech: The 'golden age of America' begins now, says Trump*, Youtube (Dec. 23, 2024), https://www.youtube.com/watch?v=XuIeXJw6BA8, at 57:02-24.

14

59.    Sections 4(a) and 4(c) unjustifiably discriminate based on sex. They are facial sex classifications and use explicitly sex-based language to dictate government decision-making. Section 4(a) compels the BOP to exclude "males" from "women's prisons." Section 4(c) prohibits the use of federal funds for any medical treatment prescribed "for the purpose of conforming an inmate's appearance *to that of the opposite sex*." Section 4(c)'s express purpose is to deter all medical treatment deemed inconsistent with birth sex.

60.    Sections 4(a) and 4(c) require BOP to treat incarcerated people differently depending on their sex. Under section 4(a), women who are not transgender can go on living in a women's facility, while otherwise similarly situated transgender women must be transferred to a men's facility based on their birth sex. Similarly, under Section 4(c), women who are not transgender are able to obtain the same medical treatments that are prohibited if they are prescribed for transgender women.

61.    Under the Fifth Amendment, sex classifications are subject to heightened scrutiny and are presumptively unconstitutional.

62.    Sections 4(a) and 4(c) also discriminate based on transgender status. Section 4(a) requires dangerous transfers to men's facilities for all transgender women, solely because they are transgender. Section 4(c) denies medically necessary healthcare to transgender people, solely because they are transgender.

63.    Under the Fifth Amendment, classifications based on transgender status are sex-based classifications that are subject to heightened scrutiny.

64.    Classifications based on transgender status are also subject to heightened scrutiny because transgender people constitute a quasi-suspect class. Transgender people are a discrete

and identifiable group of people with one shared distinguishing characteristic: they identify and seek to live as a sex different than their birth sex. This defining characteristic bears no relation to a transgender person's ability to contribute to society. Nevertheless, transgender people have faced historical discrimination in law and in fact, and they have been unable to secure equality through the political process.

65.    There is no legitimate penological purpose or other legitimate basis for Section 4(a)'s dangerous transfer requirement or Section 4(c)'s categorical healthcare ban.

66.    Neither Section 4(a) nor Section 4(c) is narrowly tailored to further a compelling government interest or substantially related to an important government interest. Moreover, Sections 4(a) and 4(c) are not even rationally related to a government interest. Accordingly, these aspects of Executive Order 14166 violate the Fifth Amendment.

67.    If Section 4(a) and 4(c) are implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT II

**Challenge to Section 4(a)**
**Eighth Amendment to the United States Constitution**
**Failure to Protect**
**Against All Defendants in Their Official Capacities**

68.    Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

69.    Under the Eighth Amendment, Maria Moe is entitled to be free from a known and substantial risk of serious harm while in BOP custody.

70.     Transferring Maria Moe to a men's prison will pose a substantial risk of serious harm, including an extremely high risk of violence and sexual assault from other incarcerated people and BOP staff. In a men's prison, Maria Moe will also be at high risk of worsening gender dysphoria, which can lead to serious physical and mental health conditions including severe depression and suicidality. These risks are obvious, well-documented, and well known to BOP officials.

71.     The risk of sexual violence to transgender people in prison is recognized in existing federal regulations. 28 C.F.R. § 115.41(d)(7) requires BOP officials to consider an individual's transgender status as a factor increasing their "risk of sexual victimization." An individual's sexual victimization risk must be considered as part of all housing and transfer decisions. *Id.* § 115.41. Decisions about whether to house a transgender person in a men's or women's facility must be made "on a case-by-case basis" to ensure the individual's "health and safety" and the security of the facility. *Id.* § 115.42(c). Given the extremely high safety risks for transgender people in BOP custody, housing placements for transgender people "shall be reassessed at least twice a year to review any threats to safety." *Id.* § 115.42(d).

72.     Section 4(a) of the Order contains a citation to 28 C.F.R. § 115.41, indicating that Defendant Trump was aware of transgender women's heightened risk of sexual victimization and the federal regulatory scheme that requires individualized housing placements to ensure their safety. Nevertheless, Defendant Trump intentionally directed the Attorney General to "amend[]" § 115.41 "as necessary" to ensure that all transgender women would be transferred to men's facilities, no matter how dangerous, without regard for their safety and security. The President's

intentional disregard of a known and substantial risk of serious harm to transgender women in BOP custody, including Maria Moe, violates the Eighth Amendment.

73.     Defendants McHenry and Lathrop are well aware of the grave risks Maria Moe will face if she is transferred to a men's prison, but they are actively enforcing Section 4(a) and have caused BOP officials to initiate her transfer anyway. Their decision to disregard the known and substantial risks of serious harm violates Maria Moe's rights under the Eighth Amendment.

74.     If Section 4(a) is implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT III

**Challenge to Section 4(c)**
**Eighth Amendment to the United States Constitution**
**Medical Deliberate Indifference**
**Against All Defendants in Their Official Capacities**

75.     Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

76.     A prison official who has knowledge of an individual's serious need for medical care and intentionally refuses to provide that care acts with deliberate indifference and therefore violates the Eighth Amendment's prohibition on cruel and unusual punishment.

77.     Maria Moe has a serious medical need for hormone therapy as treatment for her gender dysphoria, which is a rare and serious health condition. Abrupt termination of this treatment would violate the applicable standard of care and subject her to a known and substantial risk of serious harm.

78.    Terminating Maria Moe's hormone therapy would contravene her medical providers' consistent professional judgment that she needs continuous treatment for her gender dysphoria, as both the BOP ████████████ have recognized. Denying Maria Moe this medically necessary healthcare would constitute deliberate indifference to her serious medical needs and would violate the Eighth Amendment's prohibition on cruel and unusual punishment.

79.    Section 4(c) of the Order, which was issued by Defendant Trump and is being implemented by all other Defendants, establishes a blanket rule banning medically necessary treatments for all transgender people in BOP custody, without consideration of any individual's medical needs or their healthcare providers' independent medical judgment. As such, Section 4(c) constitutes deliberate indifference to the serious medical needs of all transgender people in BOP custody and violates the Eighth Amendment's prohibition on cruel and unusual punishment.

80.    If Section 4(c) is implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT IV

**Challenge to Section 4(a)**
**Rehabilitation Act of 1973, Section 504**
**Failure to Accommodate a Disability**
**Against All Defendants in Their Official Capacities**

81.    Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

82.    Maria Moe has a current diagnosis of gender dysphoria as well as a record of gender dysphoria that is known to BOP officials.

83.    Gender dysphoria is a serious medical condition that qualifies as a disability. It is a physical impairment that substantially limits the major life activities of interacting with others, reproduction, social and occupational functioning, and caring for oneself.

84.    Housing Maria Moe in a women's facility is a reasonable accommodation for her gender dysphoria and is part of the recommended treatment protocol set forth by the applicable standards of care and clinical practice guidelines.

85.    Continuing to house Maria Moe at ███████ or another women's facility would not materially impair the safe and efficient operation of the facility or the BOP generally, present a safety hazard to any staff or other incarcerated person, threaten the security of the facility, or otherwise cause undue hardship.

86.    Continuing to house Maria Moe at ███████ or another women's facility would not fundamentally alter the nature of any service, program, or activity.

87.    Involuntarily transferring Maria Moe to a men's facility under Section 4(a) of the Order would be a cruel and unnecessary revocation of this reasonable accommodation and would deny her equal benefits of correctional and rehabilitative programs and services, including but not limited to safe housing, showers, and healthcare consistent with accepted medical standards. Accordingly, Section 4(a) violates Section 504 of the Rehabilitation Act of 1973.

88.    If Section 4(a) is implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

**COUNT V**

**Challenge to Section 4(c)**
**Rehabilitation Act of 1973, Section 504**
**Disability Discrimination**
**Against All Defendants in Their Official Capacities**

89.     Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

90.     Section 4(c) categorically bans medical treatments, regardless of medical need, if they are prescribed to "conform[] an inmate's appearance to that of the opposite sex"—meaning treatments are banned only if they are prescribed to treat gender dysphoria.

91.     Section 4(c) discriminates based on disability by excluding people with gender dysphoria, including Maria Moe, from accessing medically necessary healthcare services that are provided to all other people in BOP custody based on medical need. Accordingly, Section 4(c) violates Section 504 of the Rehabilitation Act of 1973.

92.     If Section 4(c) is implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

**COUNT VI**

**Challenge to Sections 4(a) and 4(c)**
**Administrative Procedures Act**
**Arbitrary and Capricious, Unlawful, and Unconstitutional Agency Action**
**Taken Without Observance of Procedure Required By Law**
**Against Defendant Lothrop in His Official Capacity**

93.     Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

21

94.     BOP's actions to implement Sections 2, 4(a), and 4(c) of the Executive Order constitute final agency action that has harmed Maria Moe, affected her legal rights, and subjected her to an imminent risk of further harm.

95.     BOP's decision to transfer Maria Moe to a men's facility and the imminent threat to deny her necessary medical care solely because of her birth sex and transgender status are unconstitutional.

96.     BOP's decision to transfer Maria Moe to a men's facility solely because of her birth sex and transgender status is arbitrary and capricious.

97.     BOP's decision to deny Maria Moe medically necessary care to treat her gender dysphoria solely because of her birth sex and transgender status is arbitrary and capricious.

98.     BOP's decision to transfer Maria Moe to a men's facility solely because of her birth sex and transgender status is contrary to law as set forth in 28 C.F.R. §§ 115.41–42.

99.     For BOP's transfer decision to be lawful, amendments to 28 C.F.R. §§ 115.41–42 would have to be made through notice-and-comment rulemaking. Section 4(a) directs the Attorney General to make such an "amendment," but no amendment has been made at this time. BOP's decision to transfer Maria Moe prior to a valid amendment to 28 C.F.R. §§ 115.41–42 was made without observance of procedure required by law.

100.     BOP's decision to transfer Maria Moe without conducting an individualized assessment of all relevant circumstances, including her safety, was made without observance of procedure required by law.

101.    If Sections 4(a) and 4(c) are implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

(1) Issue a judgment under 28 U.S.C. §§ 2201–02 declaring that Sections 4(a) and 4(c) of Executive Order 14166 violate Plaintiff's rights under the Fifth and Eighth Amendments to the United States Constitution, the Rehabilitation Act of 1973, and the Administrative Procedure Act for the reasons and on the Counts set forth above;

(2) Enter a preliminary and permanent injunction prohibiting Defendants and their officers, employees, servants, agents, appointees, and successors from enforcing Sections 4(a) and 4(c) of Executive Order 14166, and requiring Defendants to maintain Plaintiff's housing and medical treatment consistent with the status quo before January 20, 2025;

(3) Award Plaintiff nominal damages, as well as her costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 12205, and other applicable laws; and

(4) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/Jennifer Levi
Jennifer L. Levi (Bar No. 562298)
Bennett Klein (Bar No. 550702)
Sarah Austin (*pro hac vice* pending)
**GLBTQ Legal Advocates & Defenders**
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
bklein@glad.org
jlevi@glad.org
saustin@glad.org

Christopher F. Stoll (*pro hac vice* pending)
Amy Whelan (*pro hac vice* pending)
**National Center for Lesbian Rights**
870 Market Street, Suite 370
San Francisco, CA 94102
(415) 392-6257
cstoll@nclrights.org
awhelan@nclrights.org

Alexander Shalom (*pro hac vice* pending)
Natalie Kraner (*pro hac vice* pending)
**Lowenstein Sandler LLP**
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029
ashalom@lowenstein.com
nkraner@lowenstein.com