UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARIA MOE, <br><br> Plaintiff, <br><br> v. <br><br> DONALD TRUMP, in his official capacity as President of the United States; JAMES R. MCHENRY III, in his official capacity as Acting Attorney General of the United States; WILLIAM LOTHROP, in his official capacity as Acting Director of the Federal Bureau of Prisons; <br><br> Defendants. | Civil Action No. 25-10195 <br><br> MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM, TO PARTIALLY SEAL DOCUMENTS AND FOR A PROTECTIVE ORDER |

Jennifer L. Levi (Bar No. 562298)
Bennett H. Klein (Bar No. 550702)
Sarah Austin*
**GLBTQ LEGAL ADVOCATES
& DEFENDERS**
18 Tremont, Suite 950
Boston, MA 02108

Christopher F. Stoll *
Amy Whelan*
**NATIONAL CENTER FOR
LESBIAN RIGHTS**
870 Market Street, Suite 370
San Francisco, CA 94102

Alexander Shalom*
Natalie J. Kraner*
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020

*Pro Bono Counsel for Plaintiffs*
* Pro Hac Vice Pending*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..............................................................................................ii

BACKGROUND.............................................................................................................1

STATEMENT OF FACTS ...............................................................................................2

LEGAL STANDARD .....................................................................................................3

ARGUMENT ..................................................................................................................4

    I.     PLAINTIFF SHOULD BE PERMITTED TO PROCEED UNDER PSEUDONYM................................................................................................4

    II.    PLAINTIFF SHOULD ALSO BE PERMITTED TO SEAL HER INITIATING PAPERS..............................................................................8

CONCLUSION..............................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bd. of Educ. of the Highland Local Sch. Dist. v. United States Dep't of Educ.*,
No. 2:16-cv-524, 2016 WL 4269080 (S.D. Ohio Aug. 15, 2016)..........................................6, 7

*Doe v. Aetna Life Ins. Co.*,
No. 14-14716, 2016 WL 7799638 (D. Mass. Apr. 20, 2016)................................................3, 5

*Doe v. Bell Atl. Bus. Sys. Servs., Inc.*,
162 F.R.D. 418 (D. Mass. 1995)...........................................................................................3, 4

*Doe v. Blue Cross & Blue Shield of R.I.*,
794 F. Supp. 72 (D.R.I. 1992).....................................................................................................6

*Doe v. Mass. Inst. of Tech.*,
46 F.4th 61 (1st Cir. 2022).................................................................................................3, 4, 8

*Doe v. Unum Life Ins. Co. of Am.*,
35 F. Supp. 3d 182 (D. Mass. 2014) ..........................................................................................5

*F.T.C. v. Standard Fin. Mgmt. Corp.*,
830 F.2d 404 (1st Cir. 1987).......................................................................................................4

*Free Speech v. Reno*,
NO. 98-cv-2680, 1999 WL 47310 (S.D.N.Y. Feb. 1, 1999).......................................................8

*U.S. v. Mazola*,
217 F.R.D. 84 (D. Mass. 2003)...................................................................................................5

*U.S. v. Westinghouse Elec. Corp.*,
638 F.2d 570 (3d Cir. 1980).........................................................................................................5

*United States v. Kravetz*,
706 F.3d 47 (1st Cir. 2013)......................................................................................................4, 9

**Statutes**

Administrative Procedures Act, 5 U.S.C. §§ 701–06 .......................................................................1

Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* .......................................................................1

**Other Authorities**

Executive Order 14166 ....................................................................................................................1

Sections 4(a) and 4(c) of Executive Order 14166 ...........................................................1

Federal Rule of Civil Procedure 5.2 .........................................................................10

Just. Programs, *Sexual Victimization in Prisons and Jails Reported by Inmates,*
*2011–12* (2014), https://www.ojp.gov/library/publications/sexual-
victimization-prisons-and-jails-reported-inmates-2011-12 ......................................7

United States Constitution Fifth Amendment ...............................................................1

United States Constitution Eighth Amendment ............................................................1

## BACKGROUND

Plaintiff Maria Moe ("Plaintiff") is an incarcerated transgender woman who brings this action to challenge her imminent transfer to a men's correctional facility and the denial of the medical care necessary to treat her gender dysphoria resulting from the Federal Bureau of Prisons ("BOP")'s implementation of Executive Order 14166, issued by President Donald Trump on January 20, 2025 (the "Order" or "EO"). She brings an action against President Donald J. Trump, Acting Attorney General James R. McHenry III, and Acting Director of the Bureau of Prisons William Lothrop (collectively, "Defendants") for violations of the Fifth Amendment to the United States Constitution; the Eighth Amendment to the United States Constitution; the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*; and the Administrative Procedures Act, 5 U.S.C. §§ 701–06.

Contemporaneous with the filing of the Complaint, Plaintiff filed an emergency motion asking the Court to issue a temporary restraining order (TRO) and/or a preliminary injunction prohibiting Defendants and their officers, employees, servants, agents, appointees, and successors from enforcing Sections 4(a) and 4(c) of Executive Order 14166 against Plaintiff, and requiring Defendants to maintain Plaintiff's housing and medical treatment consistent with the status quo before January 20, 2025. This motion to proceed under pseudonym and to partially seal documents relates to the Complaint and the documents filed in support of the emergency motion for a TRO and preliminary injunction. Plaintiff also moves for a related protective order, as explained herein.

Plaintiff seeks to protect the privacy of her medical history, diagnostic information, and medical treatment plans. Plaintiff also seeks to avoid the social stigmatization associated with her being transgender, and to protect herself from the harassment, retaliation, and violence—including sexual violence—that could result from publicly disclosing her identity as a transgender woman, and particularly one seeking to enforce her constitutional rights. Should she not prevail, Plaintiff

is very likely to be subjected to significant harassment and violence in the near future, as she will be transferred to a men's correctional facility. Plaintiff thus seeks to proceed under a pseudonym and to seal information that can identify her and/or reveal private and sensitive information about her, due to the risk that she will be subject to further and intensified verbal and physical harassment if corrections officials and other incarcerated people learn that she has filed a lawsuit alleging discrimination and mistreatment. In addition, because it is possible to derive Plaintiff's identity through other facts alleged or discussed in the papers filed herewith, even if Plaintiff uses a pseudonym, she also moves for an order permitting her to make redactions to those facts so that her identity remains confidential and to file her criminal defense attorney's declaration under seal.

For these reasons and the reasons set forth below, Plaintiff seeks leave to litigate this matter under a pseudonym and to make necessary redactions in her filing of the Complaint and emergency motion, and for a protective order that will ensure that other parties exercise care in protecting Plaintiff's identity.

## STATEMENT OF FACTS

Plaintiff relies upon and incorporates by reference her Complaint, which sets forth all relevant facts demonstrating her need to litigate this matter under a pseudonym. In brief summary, Plaintiff has been diagnosed with gender dysphoria, a serious medical condition and disability which is characterized by significant distress and impairment that occurs when a transgender individual is made to live in their birth sex. (Compl. ¶ 22.) Left untreated, gender dysphoria can cause debilitating and serious physical, psychological, and emotional harms. (*Id.*) To avoid these harms, transgender individuals like Plaintiff must be able to live in a different sex than their birth sex, which is the only current, medically accepted treatment for gender dysphoria. (*Id.* ¶ 24-25.) Plaintiff has undergone this treatment for many years, and now lives as a woman, exhibits female secondary sex characteristics, and is indistinguishable from her female peers. (*Id.* ¶¶ 29-32.)

Despite the well-established treatment protocols for gender dysphoria—which the BOP has followed throughout Plaintiff's time in federal custody—Defendants now seek to implement the EO to force Plaintiff's transfer to a men's correctional facility and to terminate her long-established hormone therapy treatments in direct contravention of those treatment protocols. (*Id.* ¶¶ 37-39, 42.) Adherence to the EO's requirements will subject Plaintiff to humiliating and dangerous circumstances such as exposure during bathing in view of male incarcerated persons, prevention from wearing female hairstyles and garments, using her former male name and pronouns that she has not used for a significant period of time, and potentially even strip searches conducted by male correctional officers. (*Id.* ¶¶ 40-41.)

If this is permitted to occur, and Plaintiff's medically necessary treatment for her gender dysphoria is terminated, Plaintiff will suffer potentially permanent physical and mental harm, including rapid hormonal changes, physical discomfort, loss of breast tissue, a return of male secondary sex characteristics, and an increased risk of suicidal ideation and attempts. (*Id.* ¶¶ 43-44; Decl. of Lauren Meade, M.D. ("Meade Decl."), ¶ 8.) (*See also* Decl. of Jennifer Levi ("Levi Decl."), ¶ 5; Decl. of Maria Moe's Mother ("Mother's Dec.") ¶ 4, 16; Decl. of Marie Moe's Criminal Defense Attorney ("Criminal Defense Attorney Decl."), ¶ 10.)

## LEGAL STANDARD

By default, judicial proceedings are open to the public, *Doe v. Aetna Life Ins. Co.*, No. 14-14716, 2016 WL 7799638, at *1 (D. Mass. Apr. 20, 2016); however, district courts regularly use their discretion to permit parties to litigate matters anonymously. *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995). The First Circuit has explained that four categories of exceptional cases warrant party anonymity; in relevant part, those categories include cases where the revelation of the moving party's identity would cause severe harm, and where a lack of anonymity would have a chilling effect on similarly situated potential future litigants. *Doe v. Mass.*

*Inst. of Tech.*, 46 F.4th 61, 71-72 (1st Cir. 2022). The party seeking to proceed under a pseudonym bears the burden of proof. *Id.* at 73.

The same standards apply when a party seeks leave to file documents under seal. A party seeking leave to file under seal has the burden to show that sealing is justified by "compelling reasons" that outweigh the public's presumptive right of access. *United States v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013). However, "the public's right to inspect [] records is not absolute." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987). "[P]rivacy rights of participants and third parties are [also] among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records." *Kravetz*, 706 F.3d at 62. "[W]here the public's right of access competes with privacy rights, it is proper for the district court, after weighing the competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document." *Id.* To justify sealing, a party must make a particular factual demonstration of potential harm. *Id.* at 60.

## ARGUMENT

## I.    PLAINTIFF SHOULD BE PERMITTED TO PROCEED UNDER PSEUDONYM.

Plaintiff should be permitted to proceed under pseudonym. Indeed, her case is precisely the type of case that warrants an exception to the general rules that favor public disclosure.

Courts have found that the presumption of open judicial proceedings to be outweighed "in cases involving social stigmatization, real danger of physical harm, or where the injury litigated would occur as a result of the disclosure of plaintiff's identity." *Bell Atl.*, 162 F.R.D. at 420. Specifically, courts have noted that "[c]ases in which parties are allowed to proceed anonymously because of privacy interests often involve 'abortion, mental illness, personal safety, homosexuality, transsexuality and illegitimate or abandoned children in welfare cases." *Id.* (citing *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 74 (D.R.I. 1992).

In addition, courts have routinely held that individuals' medical records are entitled to constitutional privacy protections. *See U.S. v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("There can be no question that . . . medical records, which may contain intimate facts of a personal nature, are well within the ambit of material entitled to privacy protection."); *see also U.S. v. Mazola*, 217 F.R.D. 84, 88 (D. Mass. 2003) (recognizing that individuals have a right to privacy in avoiding the disclosure of their medical records). As such, courts have allowed parties to proceed under pseudonyms in cases where medical diagnoses have been central to the litigation and disclosure would harm the moving party's health and/or safety. *See, e.g., Aetna*, 2016 WL 7799638, at *3-4 (allowing a plaintiff to proceed anonymously in a disability benefits action because of the anxiety and worsening symptoms she would suffer if her mental health diagnosis were disclosed); *Doe v. Unum Life Ins. Co. of Am.*, 35 F. Supp. 3d 182, 185 n.1 (D. Mass. 2014) (referring to a plaintiff anonymously in a disability benefits case because of "sensitive issues" in the case, including that plaintiff's medical records and HIV diagnosis).

Plaintiff's medical diagnosis, as well as her medical and mental health histories, are central to her case. Her gender dysphoria diagnosis and the withdrawal of vital medical treatments for it are the very reasons she has initiated this suit; indeed, her diagnosis and medical records form the basis of every claim and allegation in this case. (*See generally* Compl.) Since, without the Court's intervention, Plaintiff will be denied treatment for her gender dysphoria and the ability to live in a sex other than her birth sex, she faces "severe psychological distress and physical complications." (Meade Decl. ¶ 7.) If forced to live as a transgender woman in a men's prison, Plaintiff is also likely to be a target of violence, harassment, and discrimination. (Mother's Dec. at ¶¶ 14-15.) Indeed, Plaintiff has feared this exact scenario since the day she met her lawyer, who explained that Plaintiff "feared for her safety if she was housed in a men's correctional facility, which I

understood given what I know about such facilities.  She was visibly afraid and crying.  It was clear that she needed advocacy and protection." (Criminal Defense Attorney Decl. ¶ 5.)  This well-founded fear of serious harms will intensify dramatically if her identity as the plaintiff in this suit is disclosed, causing her to live in fear of more frequent and intense harassment, and further degrading her mental health. (*Id.*)

Plaintiff has other medical conditions that require additional medication.  (*Id.* at ¶¶ 5, 10.)  The interaction between that medication and the medications for gender transition at issue in this litigation is central to at least some of Plaintiff's claims.  (Meade Decl. ¶ 10.)  In other words, if not allowed to proceed under a pseudonym, Plaintiff would be forced to reveal not only her gender dysphoria diagnosis, but also other pieces of her confidential medical history.   Given the recognized right to privacy in medical records, Plaintiff should be able to proceed under a pseudonym in this case where intimate details of her medical history and treatment will be under scrutiny.

The district court in *Blue Cross & Blue Shield* dealt with an issue similar to the one in this case. 794 F. Supp. at 74. There, the plaintiff sought to proceed anonymously in his action to recoup medical expenses incurred from his "sex change" procedure.  *Id.* at 72. That plaintiff argued that he needed to litigate under a fictitious name in order to avoid stigmatization, protect his privacy, and to "insulate himself from harassment that could result from his public identification" as a transgender person. *Id.* The court granted the motion, noting the "highly sensitive and personal nature" of the facts relating to the claim.  *Id.* at 73.

Similarly, a transgender student's suit against the federal Department of Education was permitted to proceed anonymously because the plaintiff otherwise "would be required to disclose information of the utmost intimacy throughout the court of litigation."   *Bd. of Educ. of the*

*Highland Local Sch. Dist. v. United States Dep't of Educ.*, No. 2:!6-cv-524, 2016 WL 4269080, at

*5 (S.D. Ohio Aug. 15, 2016). In making its decision, the court noted that other courts allowed

transgender plaintiffs, including transgender adults, to proceed anonymously due to the social

stigma associated with being transgender. *Id.*

      As in these cases, here Plaintiff would also be required to divulge intimate details of a

sensitive nature about her personal life, including her medical and mental health records,

diagnoses, and treatment plans. In doing so, Plaintiff will be subject to further discrimination and

harassment both within and without the prison facility, exactly as she feared when speaking with

her lawyer for the first time. (Criminal Defense Attorney Decl. ¶ 5.) If transferred, the level of

harassment Plaintiff will be exposed to at a men's correctional facility, along with the drastic

negative physical and mental effects of being denied medical and pharmaceutical treatment, will

increase exponentially.

      This is consistent with statistics showing that incarcerated transgender people experience

disproportionately high rates of harassment and violence. The risk transgender people face in

custodial settings was illuminated in a 2013 study by the Department of Justice, which estimated

that 35% of transgender inmates in state and federal prisons were sexually assaulted between 2007

and 2012. U.S. Dep't of Just. Off. of Just. Programs, *Sexual Victimization in Prisons and Jails*

*Reported by Inmates, 2011–12* (2014), https://www.ojp.gov/library/publications/sexual-

victimization-prisons-and-jails-reported-inmates-2011-12. From 2011 to 2012, transgender people

were sexually assaulted at nearly ten times the rate for the general incarcerated population. *Id.* If

others, both within the correctional facility and outside it, were to learn that Plaintiff filed a suit

alleging discrimination, she could be at still further risk of harassment, potential retaliation, and

physical and sexual violence.

In addition, given the politically and socially disfavored status of transgender people in American society, especially in the current challenging political climate, a lack of anonymity in this case is likely to chill other transgender litigants, incarcerated or not, from filing similar suits challenging violations of their constitutional and statutory rights. Indeed, the First Circuit has explained that "deterrence concerns typically arise[] in cases involving 'intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors.'" *Mass. Inst. of Tech.*, 46 F.4th at 71 (quoting *In re Sealed Case*, 971 F.3d 324, 327 (D.C. Cir. 2020)). To prosecute their claims in cases such as this, transgender litigants are required to disclose numerous private details regarding their bodily autonomy, as well as sensitive medical histories and treatments. If those litigants are forced to associate their names with such sensitive personal information, huge swaths of potential litigants will be discouraged from vindicating their rights. Denial of permission to proceed under a pseudonym in this case would deter countless transgender individuals from seeking redress via litigation.

Finally, proceeding pseudonymously will not prejudice Defendants, prevent them from accessing necessary information, or otherwise hinder their ability to litigate this matter. *See Free Speech v. Reno*, NO. 98-cv-2680, 1999 WL 47310, at *2 (S.D.N.Y. Feb. 1, 1999) (stating that governmental entities are generally not prejudiced when plaintiffs proceed anonymously). Any interests Defendants have in proceeding publicly are undoubtedly outweighed by Plaintiff's interests in protecting her health and safety.

## II.    PLAINTIFF SHOULD ALSO BE PERMITTED TO SEAL HER INITIATING PAPERS.

While a presumption exists that the public should have access to judicial records, a court must "carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case, keeping in mind only the most compelling reasons can justify non-

disclosure of judicial records." *U.S. v. Kravetz*, 706 F.3d 47, 59 (2013). Such "compelling reasons" exist here. In order to fully protect Plaintiff's from potential harassment and violence as well as the privacy of her medical history, diagnostic information, and medical treatment plans, additional information contained in the Complaint and in the emergency motion for a TRO and preliminary injunction and associated declarations must be sealed to protect her identity.

The facilities Ms. Moe has been held house a limited number of incarcerated transgender women, and thus her identity could be easily ascertained if those facilities were made public. (Levi Decl. ¶ 12.) Biographical details such as Ms. Moe's age, place of residence, her current and former names, date of birth, school experience, and the identity of her mother and criminal defense attorney would provide an easy means of identifying her with minimal research or by people within her community. (*Id.* ¶¶ 13-14.) Further, certain details surrounding Ms. Moe's criminal history could be easily tied to her criminal case and therefore to her identity, including the crimes she was convicted of, quotes from the sentencing judge, the period of her incarceration, her disciplinary record, her rehabilitation activities, and her relationship and communications with her lawyer. (*Id.* ¶¶ 16-17.) And of course, all details of Ms. Moe's medical records, treatments, and specific physical and mental health diagnoses, including those outside of her gender dysphoria, could easily identify her to anyone aware of her composite medical diagnoses. (*Id.* ¶ 15.) These categories of information must be redacted and sealed in order to prevent Ms. Moe from the harms of publicizing her identity.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court (1) grant her motion to proceed under a pseudonym; (2) grant her motion to partially seal the Complaint and emergency motion for a TRO and preliminary injunction, as well as the supporting declarations and memorandum of law filed with that motion, and to file the affidavit of Plaintiff's criminal defense

attorney completely under seal; and (3) enter a protective order that (a) prohibits Defendants from disclosing Plaintiff's identity to any third party unless such disclosure is necessary to defend against this action, and (b) requires any party, including any third parties, that files a document identifying Plaintiff to redact all personal identifiers in accordance with Federal Rule of Civil Procedure 5.2, as well as (i) Plaintiff's biographical details, including but not limited to her age, place of residence, current and former names, date of birth, school experience, the identity of her mother and criminal defense attorney, (ii) her criminal history, including the crimes she was convicted of, quotes from the sentencing judge, the period of her incarceration, her disciplinary record, her rehabilitation activities, and her relationship and communications with her lawyer, (iii) all details of Plaintiff's medical history, records, treatments, and specific physical and mental health diagnoses, including those outside of her gender dysphoria, and (iv) any other information that could identify Plaintiff to the public.

Respectfully submitted,

Dated:  January 26, 2025

/s/ *Jennifer Levi*
Jennifer L. Levi (Bar No. 562298)
Bennett H. Klein (Bar No. 550702)
Sarah Austin (pro hac vice pending)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
bklein@glad.org
saustin@glad.org

Christopher F. Stoll (pro hac vice pending)
Amy Whelan, Esq. (pro hac vice pending)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102

(415) 365-1320
cstoll@nclrights.org
awhelan@nclrights.org

Alexander Shalom (pro hac vice pending)
Natalie Kraner (pro hac vice pending)
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029
(973) 422-6722
ashalom@lowenstein.com
nkraner@lowenstein.com